**Roosevelt GREEN, Jr., Petitioner-Appellant,**

v.

**Walter D. ZANT, Respondent-Appellee.**

No. 82–8773.

United States Court of Appeals, Eleventh Circuit.

Sept. 19, 1983.

John Charles Boger, New York City, for petitioner-appellant.

Virginia H. Jeffries, Wm. B. Hill, Jr., Asst. Attys. Gen., Atlanta, Ga., for respondent-appellee.

Before TJOFLAT, VANCE and CLARK, Circuit Judges.

VANCE, Circuit Judge:

Roosevelt Green, Jr. was convicted of murder and sentenced to death for his part in the kidnapping and murder of Teresa Allen, an eighteen year old student who was abducted from her job as a part time cashier at a Majik Market convenience store in Cochran, Georgia, on December 12, 1976. The Supreme Court of Georgia affirmed the conviction. *Green v. State,* 242 Ga. 261, 249 S.E.2d 1 (1978). The United States Supreme Court granted certiorari, vacated petitioner's death sentence and remanded for further proceedings. *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979). The Georgia Supreme Court remanded the case to the trial court with directions to retry the sentencing portion of the trial. *Green v. State,* 244 Ga. 27, 257 S.E.2d 543 (1979).

Retrial resulted in reimposition of the death sentence. The Supreme Court of Georgia affirmed. *Green v. State,* 246 Ga. 598, 272 S.E.2d 475 (1980). The United States Supreme Court denied certiorari. *Green v. Georgia,* 450 U.S. 936, 101 S.Ct. 1402, 67 L.Ed.2d 372 (1981).

Petitioner filed for a writ of habeas corpus in the Superior Court of Butts County on June 11, 1981, which was dismissed by the court in an order also dated June 11. On June 12, the Georgia Supreme Court granted a stay of execution pending disposition of an application for certificate of probable cause, and subsequently remanded for an evidentiary hearing. Following the hearing, the Superior Court dismissed the petition and denied relief. The Georgia Supreme Court denied an application for a certificate of probable cause and the United States Supreme Court denied certiorari. *Green v. Zant,* 455 U.S. 983, 102 S.Ct. 1493, 71 L.Ed.2d 693 (1982).

Green filed the present petition for a writ of habeas corpus in the United States District Court for the Middle District of Georgia and thereafter filed a motion for an evidentiary hearing. The district court denied both the motion and petition and Green appeals to this court.

Green raises ten issues before this court: whether the trial court's discharge of one juror during deliberations on petitioner's resentencing without investigation violated petitioner's sixth, eighth and fourteenth amendment rights; whether Green's death sentence violates the proscription of *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) against imposition of capital punishment upon one who himself neither took life, intended to take life, nor attempted to take life; whether non statutory aggravating circumstances were improperly admitted during Green's resentencing proceeding; whether submission during Green's resentencing trial of evidence relevant to statutory aggravating circumstances which had been previously adjudicated in his favor violated his fifth amendment right to be free of double jeopardy; whether the state improperly prevented Green from introducing evidence in mitigation; whether jurors were excluded in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); whether introduction into evidence of portions of the victim's corpse during the resentencing proceeding so infected Green's trial with passion and prejudice as to violate his rights under the eighth and fourteenth amendments; whether the trial court improperly commented on Green's failure to testify; whether the trial court erred in refusing to instruct the sentencing jury that Green was presumed innocent of aggravating circumstances; whether Green was denied the effective assistance of counsel. Because the record is inadequate to support resolution of the first issue, we remand for an evidentiary hearing on that issue and express no opinion as to the remaining issues. This panel will retain jurisdiction over the case. We instruct the district court to certify its findings and the record of its proceedings to us within ninety days of issuance of this opinion. *Coleman v. Zant,* 708 F.2d 541, 544 (11th Cir.1983); *Spivey v. Zant,* 661 F.2d 464, 478 (5th Cir. 1981), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982).

The record reveals the following undisputed facts. Approximately three hours after they began their sentencing deliberations, the jury returned to the courtroom and the foreperson asked the judge "can a sentence be given, 'life in prison without parole?'" The court responded that it could not answer the question. After another brief question and answer, the jury began to withdraw to resume its deliberations.

At this point, one of the jurors, Dorothy Mae Ponder Todd, fell to the floor in the hallway outside the courtroom and in an audible voice repeatedly cried "I can't do it."

Shortly thereafter, the foreperson returned to the courtroom and the following colloquy took place:

BY THE COURT: Let the record show that the Foreperson of this Jury, Mrs. Martha McGee, has been requested to come back into the Courtroom by the Court and the Court desires to ask a question of Mrs. McGee. Mrs. McGee, I understand that the Juror, Dorothy Mae Ponder Todd a few moments ago upon leaving the Courtroom fainted in the corridor, is that correct?

BY FOREPERSON McGEE: Yes, sir.

BY THE COURT: And you have stated to me that upon returning to the Jury room, this Juror is in your opinion incapable of continuing deliberation in this case because of the fact that she is physically and emotionally unable to continue and participate in the deliberation of this Jury, is that true?

BY FOREPERSON McGEE: Yes, sir, it is.

BY THE COURT: And has this person requested of you that she be released from further service?

BY FOREPERSON McGEE: Yes, sir.

BY THE COURT: In your opinion, from having examined her, is she in this condition?

BY FOREPERSON McGEE: Yes, sir, she is.

BY THE COURT: You may go back to the Jury room.

. . . .

BY THE COURT: Sheriff Bittick, I'm going to direct you to remove Juror Dorothy May Ponder Todd from the Jury room. This is being done at her request and upon the advice and at the request of the Jury Foreperson, Mrs. McGee, conveying this Juror to a doctor or some medical facility for the purpose of having her examined and receiving such treatment as she might require.

The record does not suggest that the court attempted to speak to juror Todd herself concerning her condition. No medical advice was sought, nor were there any precautions taken to guard against the possibility that this juror might simply have been reluctant to continue to maintain her position during deliberations. In any event, Todd was replaced by the first alternate.

During petitioner's state habeas corpus hearing, juror Todd submitted an affidavit which was admitted into evidence. The affidavit stated that Ms. Todd was one of two jurors voting against the death penalty and that her statement "I can't do it" referred to her conviction that a death sentence should not be imposed in this case. The affidavit also makes clear that Ms. Todd felt capable of continuing in jury service and would have so informed the trial court if she had been given the opportunity:

I heard testimony as a juror for the entire sentencing trial as charged by the Court.

After a lunch break on Saturday, November 10, we began deliberations.

I heard all the evidence and particpated [sic] fully in the deliberations. A secret ballot was taken by the foreperson. The vote was 10–2 in favor of the death penalty. I voted against the death penalty.

Just before 5:00 p.m., the jury returned to the courtroom with two questions for the Court concerning whether life imprisonment meant no parole and whether it was possible to have testimony of a witness read to us.

After the judge said what he did, I felt that the other juror would be more likely to give the death sentence because he thought that Roosevelt Green would be paroled.

We then went out of the courtroom. Before I got on the elevator, I collapsed. I had never collapsed before in my entire life.

*I had every intention of continuing as a juror. I don't remember ever making any statements to anyone asking to be taken off the jury.*

*The judge never asked me personally whether I could continue. I was capable of continuing to serve as a juror and I'm sure that I would have standed [sic] firm with my convictions.*

(emphasis added).

Petitioner contends that the trial court erred by not questioning juror Todd or further investigating her illness. Green has stated a colorable claim of constitutional magnitude. Under the peculiar facts of this capital case, Green's "valued right to have his trial completed by a particular tribunal," *United States v. Jorn,* 400 U.S. 470, 480, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971), *quoting Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949), and his sixth amendment right to a fair, impartial and representative jury may well have required that the trial court investigate the need to discharge juror Todd.

Georgia law provided that an alternate juror may be substituted if "a juror ... becomes ill, or upon other good cause shown to the court is found unable to perform his duty." Ga.Code Ann. § 59–910. Similarly, a federal district court possesses the discretion to remove a juror when that juror's capacity to perform his duties becomes impaired. "There must be some 'sound' basis upon which the trial judge exercise[s] his discretion" to remove the juror. *United States v. Rodriguez,* 573 F.2d 330, 332 (5th Cir.1978). Dismissal of a juror "for want of any factual support, or for a legally irrelevant reason" is prejudicial. *Id.* In many cases the nature of the juror's inability will be evident to the court so that a hearing on the issue is unnecessary. *See, e.g., Cherry v. Director, State Board of Corrections,* 635 F.2d 414, 417 (5th Cir.1981) (en

banc), *cert. denied,* 454 U.S. 840, 102 S.Ct. 150, 70 L.Ed.2d 124 (1982) ("Common experience teaches that the sudden death of a juror's parent would so emotionally incapacitate the juror as to make his uninterrupted service impractical"); *Henderson v. Lane,* 613 F.2d 175, 176 (7th Cir.), *cert. denied,* 446 U.S. 986, 100 S.Ct. 2971, 64 L.Ed.2d 844 (1980) (heart attack and hospitalization of juror); *United States v. Rodriguez,* 573 F.2d at 331–32 (juror failed to appear, instead reporting by telephone that he preferred to go to work); *United States v. Smith,* 550 F.2d 277, 285–86 (5th Cir.), *cert. denied,* 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977) (two jurors sleeping in open court); *United States v. Cameron,* 464 F.2d 333 (3d Cir.1972) (juror sleeping); *United States v. Meinster,* 484 F.Supp. 442 (S.D.Fla.1980), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982) (heart attack).

■ Where the disability of the juror is less certain or obvious, however, some hearing or inquiry into the situation is appropriate to the proper exercise of judicial discretion. *See Cherry v. Director, State Board of Corrections,* 635 F.2d at 418 (action dismissing juror for illness was "not abrupt, but was taken only after inquiry and overnight deliberation"); *United States v. Cohen,* 530 F.2d 43, 48 (5th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976) (court questioned the sleeping juror before replacing him); *United States v. Franks,* 511 F.2d 25, 37 n. 19 (6th Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2654, 45 L.Ed.2d 693 (1975) (court questioned juror before dismissing on basis of nervous condition).

■ When reviewing a petition for habeas corpus, however, our scope of inquiry is not the broad exercise of supervisory power that federal appellate courts possess in regard to federal district courts. *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *Corn v. Zant,* 708 F.2d 549, 555 (11th Cir.1983); *Stanley v. Zant,* 697 F.2d 955, 972 (11th Cir.1983). Before a state prisoner may pre-

vail, he must show that the asserted error is of constitutional magnitude.

■ The issue raised by Green may well reach such stature. The circumstances of the dismissal of juror Todd raise the suggestion that her refusal to impose the death penalty was a factor in her dismissal. *Green v. State,* 246 Ga. 598, 272 S.E.2d 475, 487 (1980) (Hill, J., dissenting). If that is the case, then the dismissal may well have violated *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). According to the *Witherspoon* standards, a juror's decision that death is not appropriate under the facts of a given case is not constitutionally sufficient to permit her discharge from the jury. *Witherspoon* makes clear that a juror may be excused from a jury in death-qualification procedures only if her views would compel her to vote automatically against imposition of the death penalty in all cases. The fact that juror Todd was not excluded from the jury during the pretrial death-qualification procedures indicates that her refusal to impose a death sentence in this case stemmed from her determination of the inappropriateness of such a penalty *on the facts of this case* rather than a general refusal to impose the death penalty in any case.

■ Certainly it would violate a criminal defendant's due process rights were a court to dismiss a juror because of her refusal to impose the death penalty in a given case. Trial courts have discretion to dismiss ill jurors, but there is no discretion whatever to dismiss such a juror who is *not* in fact ill or otherwise incapacitated. The *Witherspoon* dimension of this case indicates that the trial court had a constitutional duty to adequately investigate the need for a discharge prior to dismissing juror Todd. This is especially true because Todd had already actively participated in the jury's deliberations. In such a case, a court's acceptance of ambiguous statements of a foreperson cannot, standing alone, be deemed sufficient.

Our difficulty is that to date no court has made findings of historical fact necessary to resolve Green's constitutional claim. Find-

ings of specific historical facts are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Mason v. Balcom,* 531 F.2d 717, 721–22 (5th Cir.1976). Such facts include "a recital of external events and the credibility of their narrators . . . ." *Townsend v. Sain,* 372 U.S. 293, 310 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963), *quoting Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397, 445, 97 L.Ed. 469 (1953) (opinion of Frankfurter, J.). Specifically, we do not know whether juror Todd was so ill that she was unable to continue deliberations. If she was so incapacitated and if a hearing would have revealed that fact to the trial court, then Green cannot complain that he was prejudiced by the court's failure to hold a hearing. At the other extreme, if a hearing would have revealed that Ms. Todd was clearly able to continue as a juror, then failure to hold the hearing raises the possibility of potentially fatal prejudice.

▮▮▮▮ The primary responsibility for factfinding resides with the state court. Where facts necessary to support a constitutional claim have not been adequately developed in the state courts, however, a federal evidentiary hearing is necessary. *Guice v. Fortenberry,* 661 F.2d 496, 500–01 (5th Cir.1981) (en banc). In *Townsend v. Sain,* the United States Supreme Court delineated the circumstances in which a federal evidentiary hearing is mandatory. The *Townsend* Court held that a federal evidentiary hearing is required whenever "the merits of the factual dispute were not resolved in the state hearing." 372 U.S. at 313, 83 S.Ct. at 757. Thus, the initial task of the federal court is to determine whether the state court made factfindings upon which the federal court may properly review the constitutional claims of state prisoners. There "cannot even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact tendered by the defendant." *Id.* at 313–14, 83 S.Ct. at 757. The question of whether factfindings were actually made by the state court is a threshold inquiry. This inquiry must occur prior to any discussion of the presumption of correctness given to factual determinations made by state

courts and before examination of the six particularized circumstances which warrant an evidentiary hearing set out in *Townsend,* 372 U.S. at 313, 83 S.Ct. at 757, and more recently discussed by this court in *Coleman v. Zant,* 708 F.2d 541, 545–49 (11th Cir.1983) and *Thomas v. Zant,* 697 F.2d 977 (11th Cir.1983).

▮▮▮ State court findings of primary historical fact may be express or implied. While express findings are of course preferable, they are not necessary. "[I]f no express findings of fact have been made by the state court, the District Court must initially determine whether the state court has impliedly found material facts." *Townsend v. Sain,* 372 U.S. at 314, 83 S.Ct. at 757. In the latter case the federal court must "reconstruct the findings of the state trier of fact, either because his view of the facts is plain from his opinion or because of other indicia." *Id.* It is also possible to infer factfindings from clearly articulated or well settled legal principles relied on by the state court. This issue may arise in three contexts: the record may clearly reveal that the state court applied the correct legal standard, or it may reveal that it applied the incorrect legal standard, or it may not reveal the standard applied by the state court. Factual reconstruction may be possible in the first two instances; it is most difficult in the third, unless the relevant legal principle is particularly well settled. *See generally* Wright & Sofaer, Federal Habeas Corpus for State Prisoners: the Allocation of Fact-Finding Responsibility, 75 Yale L.J. 895, 936–40 (1966).

In the present case the state habeas court found only that the trial court "made a proper investigation of a sick juror who had an epileptic seizure during the deliberation of the jury as reflected by the record at page 1,136 and replaced this juror with the first alternate. This was a matter that addressed itself to the discretion of the judge and his actions were a proper exercise of those discretions." The issue for us is whether this statement compels the conclusion that the state court made a finding of

fact that juror Todd was too ill to continue as a juror. The court's order and result supports either of two rival interpretations. On the one hand, the court might have found that Todd's affidavit was not credible. On the other hand, the court might have concluded that even if the affidavit was taken as true, Green had failed to sustain his claim of a constitutional violation. The difference is crucial to the scope of our review: the former is presumptively correct but we are not bound by the latter.

We are reluctant to choose between these possible interpretations of the state court's order because the court did not articulate the legal standard it was applying.

> Reconstruction is not possible if it is unclear whether the state finder applied correct constitutional standards in disposing of the claim. Under such circumstances the District Court cannot ascertain whether the state court found the law or the facts adversely to the petitioner's contentions. Since the decision of the state trier of fact may rest upon an error of law rather than an adverse determination of the facts, a hearing is compelled to ascertain the facts.

*Townsend v. Sain,* 372 U.S. at 314, 83 S.Ct. at 757.

■ Even when the state court does not articulate the legal principle it is using, federal courts may "properly assume that the state trier of fact applied correct standards of federal law to the facts" absent indicia of unreliability. *Id.* at 315, 83 S.Ct. at 758. There are two indicia of unreliability in this case. First, there is no clear settled standard governing the need for a hearing prior to dismissing an allegedly ill juror. "If the correct standard is well settled, it is proper to assume it was applied" by the state court. Wright & Sofaer, *supra* at 940. Conversely, in the absence of such a legal standard, it is of increased importance that the state court articulate the theoretical basis of its decision.

Second, the state court stated in its order that juror Todd had become incapacitated by an "epileptic seizure." Nothing in the record suggests that Todd was stricken with epilepsy, but it is clear that *another* juror in this case suffered an epileptic seizure after the period of deliberations had begun. On the day after deliberations began at the guilt-innocence phase, one of the jurors had a seizure in the motel where the jurors were staying. Bailiffs and the sheriff spoke by telephone with the juror's family and his physician. In their discussions with the juror's family the bailiffs were told that the juror "would not remember having a seizure this morning." The trial judge, after hearing the sheriff's recounting of the statements of the juror's family and physician, allowed the juror to continue with deliberations. This incident was entirely separate from the one involving juror Todd.

■ Thus, we cannot conclude that the state habeas court made a finding of fact that juror Todd was unable to continue with deliberations. Similarly, the Georgia Supreme Court did not make findings of fact. Such findings would be entitled to a presumption of correctness. For purposes of the 28 U.S.C. § 2254(d) presumption it does not matter whether the state trial court or appellate court is the factfinder. *Sumner v. Mata,* 449 U.S. 539, 545–48, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981); *Hance v. Zant,* 696 F.2d 940, 957 (11th Cir. 1983). The Georgia Supreme Court opinion, however, makes it clear that the crucial factual findings were not made.

> During deliberations, a juror fainted and the trial judge questioned the foreperson of the jury as to the physical status of the ill juror. The foreperson answered that the juror was physically and emotionally unable to continue and that the juror had requested to be relieved. The foreperson also told the court that from her personal observation this juror was unable to continue. The trial court excused the juror, and substituted, without objection, the first alternate. Appellant alleges error and argues that the trial court should have questioned the ill juror itself. We do not agree.
>
> Such matters are necessarily within the discretion of the trial court and no abuse of discretion has been shown. The substi-

tution of the alternate juror was proper. *Tanner v. State,* 242 Ga. 437, 249 S.E.2d 238 (1978); Code Ann. § 59–910. Enumeration of error 16 is without merit. *Green v. State,* 246 Ga. at 603–04, 272 S.E.2d 475 at 483.

Because material facts pertaining to Green's federal constitutional claim were not adequately developed in the state court, we conclude that an evidentiary hearing and appropriate findings of fact are necessary and we remand for that purpose. Fact finding is the basic responsibility of the district courts, rather than the appellate courts, *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982); *DeMarco v. United States,* 415 U.S. 449, 450, 94 S.Ct. 1185, 1185, 39 L.Ed.2d 501 (1974).

REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH INSTRUCTIONS.