WILSON, Circuit Judge,
dissenting:
I cannot say that Henry should prevail on the merits of his juror misconduct claim, or if it is procedurally barred. I can unequivocally say, however, that he has not been afforded a sufficient opportunity to show cause and prejudice to overcome default of his claim. I would vacate the district court’s opinion and remand for discovery and an evidentiary hearing where Henry can have the occasion to show cause and prejudice.
Henry’s counsel did not raise a juror misconduct claim on direct appeal. The state habeas court granted Respondent’s motion in limine excluding Henry’s investigative team’s affidavits as impermissible evidence, then concluded that his juror misconduct claim had been procedurally defaulted and did not reach the merits.[1] Therefore, in order to overcome the procedural default, Henry must show cause and prejudice. In order to do this, Henry requested an evidentiary hearing to strengthen his evidence — an opportunity to subpoena each of the jurors and examine them under oath. Contrary to the Majority’s characterization, Henry clearly requested an evidentiary hearing on his juror misconduct claim in his petition before the district court and before this court.[2] Henry also seeks discovery from third party observers, including the bailiffs.
The district court, quoting Kelley v. Sec’y for Dept. of Corr., 377 F.3d 1317, 1335 (11th Cir.2004), ultimately concluded that:
*1234 Where, as here, a state hearing was held,
a habeas petitioner is “entitled to an evidentiary hearing if he can show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure.” Keeney v. Tamayo-Reyes, 504 U.S. 1, 11 [112 S.Ct. 1715, 118 L.Ed.2d 318] (1992).[3] In discussing whether Henry makes this cause and prejudice showing, the district court did not address cause because it decided that there would be no prejudice. I believe that there was cause for Henry’s failure to develop the factual record below and disagree with the district court’s finding that there was no prejudice. Cause can be shown either by the trial court’s denial of Henry’s counsel’s request for funding to pursue the claim, or by his claim of ineffective assistance of counsel.[4] Further, to the extent that the Majority is suggesting that Henry cannot show cause because he had a state court hearing on his juror misconduct claim, we disagree that it was a full and fair hearing on the merits. See FN 1. At every stage, Henry has sought to develop the evidentiary record in order to prove his juror misconduct claim, and at every stage, some obstacle has prevented him from developing this record fully to permit fair consideration of his claim.
Regarding prejudice, the district court gave two reasons for concluding that there was no prejudice, and an additional reason not to be concerned even if there was. First, the district court concluded that Henry was bound by its determination in an earlier order that the evidence Henry sought to develop was inadmissible. In its January 30, 2009 order, the district court analyzed the sources of evidence that Henry wished to develop and concluded that they would be, for the most part, barred by Federal Rule of Evidence 606(b) and the equivalent Georgia Rule, which it determined were materially similar. Second, the district court found that Henry failed to comply with its request to “set forth with particularity what evidence [he] intends to present at the hearing, which witnesses would present that evidence, and exactly what those witnesses would say.”
Upon review, however, it seems premature to conclude that all potential evidence *1235 of an alleged constitutional violation is inadmissible because some evidence, which Henry has not had a sufficient opportunity to gather, may be precluded by either Georgia evidence rules or Rule 606(b).[5] It is not even clear that the jurors’ testimony will be excluded for several reasons. First, in Tanner v. United States, the Supreme Court reasoned that precluding juror testimony of the circumstances then before the court (a juror’s use of alcohol) was not a constitutional violation because there were other mechanisms to adequately protect the defendant’s rights, such as voir dire and non jurors observing the particular juror’s drunkenness in court. 483 U.S. 107, 126-27, 107 S.Ct. 2739, 2750-51, 97 L.Ed.2d 90 (1987). However, as Henry argues, unlike the jurors in Tanner, the alleged juror misconduct in this case was neither easily observable by outsiders nor likely to be reported by the jurors at the time. Further, Tanner was a fraud case, whereas the Supreme Court recognizes the heightened constitutional concerns in capital cases. See, e.g., Harmelin v. Michigan, 501 U.S. 957, 994, 111 S.Ct. 2680, 2701, 115 L.Ed.2d 836 (1991) (“Proportionality review is one of several respects in which we have held that ‘death is different’ and have imposed protections that the Constitution nowhere else provides.”). Second, the text of Rule 606(b) decidedly does not include allegedly misleading communications between the jury and the judge, or the allegedly conspiratorial comments that jurors made at a pizza shop while juror Hill was in the hospital. See Fed.R.Evid. 606(b). Third, if upon development of the factual record, otherwise inadmissible evidence proves to be the only means by which Henry’s constitutional claim can be heard, the court will have to ensure that the rules are not applied in a manner that violates Henry’s constitutional rights. Cf. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324-26, 129 S.Ct. 2527, 2540-41, 174 L.Ed.2d 314 (2009) (finding that the protection of the Confrontation Clause cannot be disregarded despite petitioner’s ability to subpoena the experts); Waldrip v. Humphrey, 532 Fed.Appx. 878, 891 (11th Cir.2013) (per curiam) (Barkett, J., concurring) (“A state court cannot use its evidentiary rules to deny an individual access to a fundamental constitutional right.”).
Further, the district court’s conclusion that Henry was not prejudiced by his lack of a hearing is circular. After denying his request for an evidentiary hearing, the district court reasoned that no prejudice could result from this decision because the court would “carefully consider! ] all of the evidence that Petitioner proffered in state court.” This did not, however, cure any prejudice from Henry’s lack of development of the record. Indeed, Henry is seeking an evidentiary hearing precisely to increase the weight of the evidence suggesting that there was juror misconduct. Ultimately, it was the gaps and inconsistencies in Henry’s proffered evidence that led the district court to deny his petition because his claim would fail on the merits. The fact that he failed on the merits because he lacked evidence proves precisely, contrary to the district court’s holding, that he was prejudiced by the lack of factual development below. Thus, he showed the cause and prejudice necessary to secure an evidentiary hearing.[6] In *1236 short, the district court’s two reasons for concluding that there was no prejudice due to the lack of factual development are unpersuasive, and its purported cure — considering the evidence — did not actually eliminate the remaining prejudice. To the contrary, it was the incomplete and inconsistent evidence that proved fatal.[7]
The prejudice flowing from the lack of factual development before the state habeas court is apparent in the district court’s recognition that Henry’s constitutional juror misconduct claim is “somewhat compelling.” Despite the fact that Henry did not have the benefit of discovery, subpoena power, or compulsory process, Ms evidence created a close constitutional call. Unlike the district court, which at least thoroughly considered the insufficiently developed evidence as proffer, the Majority completely ignores the evidence indicating a potential constitutional violation. And there is no doubt, as the Respondent conceded at oral argument, that if Henry could prove that Hill’s refusal to impose the death penalty was a factor in her dismissal, the juror misconduct leading to her dismissal constitutes a violation of Henry’s due process rights. See Green v. Zant, 715 F.2d 551, 556 (11th Cir.1983) (confronting the *1237 precise issue of whether a juror had been impermissibly dismissed due to her refusal to impose the death penalty and concluding that “[cjertainly it would violate a criminal defendant’s due process rights were a court to dismiss a juror because of her refusal to impose the death penalty in a given case”). Green is strikingly analogous, as the factual findings there were also incomplete, prompting the court to explain that “[wjhere facts necessary to support a constitutional claim have not been adequately developed in the state courts ... a federal evidentiary hearing is necessary.” Id. at 557.
Respondent has tried to distinguish Green, noting that in that case, the juror was excused without speaking directly with the judge. However, although Hill was brought in to speak with the judge in this case, there is evidence that the judge was misled and lacked critical information at the time of Hill’s dismissal. Although the Majority omits this evidence, Hill specifically declared in her affidavit that she could not share the full truth when she spoke to the trial judge:
When I was called into the courtroom, I was surprised. It was full of people, the judge, the lawyers and others. I was confused by this because I thought I would be meeting privately with the judge. I realized I couldn’t tell the courtroom what was happening in the jury room. If I did, it would give the case away. I had wanted to talk privately with the judge because I believed the other jurors were violating the rules on how jurors must treat each other. I remember wanting to tell him that our deliberations were just like the movie, Twelve Angry Men. I know however from the judge’s instructions that I was not allowed to discuss what was going on with the case, but I thought that if we were alone, it would be ok to explain what was going on in the deliberation room. I never got the chance to talk with the judge in private.
Affidavit of Beth Hill, December 8, 2000, p. 7.
In addition to Hill’s statement indicating that the trial judge was misled, Henry offers other affidavits, which the Majority ignores, in support of his claim that Hill’s status as the lone holdout against the death penalty was a factor in her dismissal and thus his constitutional rights were violated. For example, Hill states that when deliberations began, she was the lone juror who voted against imposing the death penalty. She explained that she did not believe that Henry deserved the death penalty because of his background and because she believed that he panicked when Officer Ingram approached him. She stated that after explaining her reasoning to the other jurors, “the jury room seemed to explode with angry voices,” with some jurors verbally attacking her and accusing her of being a murderer, which precipitated her abdominal pains and visit to the hospital. She also explained that the atmosphere was tense when she rejoined the rest of the jurors the next morning.
Thus, there is evidence showing that the other jurors were angered by Hill’s opinion, but she did not have a chance to explain this to the judge. The jurors’ plan to mislead the judge because of her opinion is also shown by juror Holland’s statement that when Hill returned, she indicated that she was ready and able to deliberate, but Holland explained that “[w]e all talked about it and decided that we, as the jury, should inform the Judge of our concerns over her state of mind, because she wasn’t going to vote for death, no matter what. I didn’t feel uncomfortable talking about the case in front of her, but I knew that we would be deadlocked if she stayed on the jury.” Jenny Ewing O’Brien also recalled a conversation with *1238 juror Gant who explained that “[a]fter Ms. Hill was taken to the hospital, the jury discussed what would happen next. They agreed that she would not be coming back and that the alternate would be put in.... Mr. Gant thought he was a reasonable man who they could work with.” Also, Gant noted that when the jury learned Hill would be returning to deliberations, the foreman was displeased and told the jury: “She is coming back with a mission. She is coming back to save that boy’s life.” Rebecca Cohen also recalled another conversation with juror Gant who stated that “[t]he jury agreed as a whole that they did not want to be deadlocked. To avoid this possibility, the jury decided that the foreman should write a note to the judge explaining that if Beth Hill returned to the jury they would never reach a verdict.” Jeffrey Ertel recalled a separate conversation with juror Walker, who relayed that jurors may have gotten together in the hotel to discuss Hill and may have written a note requesting that Hill be removed from the jury because they were deadlocked.
After the benefit of discovery and evidentiary development, the district court may conclude that Henry’s evidence of juror misconduct is still insufficient. However, it is premature to conclude that Henry cannot overcome the procedural default without the benefit of a more developed record, especially when the district court held that he was not entitled to an evidentiary hearing because, in part, his evidence was insufficient to support his claim. The use of such circular logic to conclude that Henry has not shown cause and prejudice constitutes an abuse of discretion.
I respectfully dissent.

. It is important to note that Henry has not been afforded a full and fair hearing on the merits of his juror misconduct claim. In Williams v. Allen, we examined whether a petitioner "was denied a full and fair hearing within the meaning of Townsend ” v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). 542 F.3d 1326, 1347 (11th Cir.2008). We listed six circumstances in which a hearing is not full and fair, and the first occurs when "the merits of the factual dispute were not resolved in the state court hearing.” Williams, 542 F.3d at 1347 (internal quotation marks omitted). Indeed, the state court hearing here is distinguishable from the hearing in Williams in ways beyond the fact that the state court here did not reach the merits. Although the state habeas court accepted the juror affidavits Henry had obtained and testimony from investigators who had interviewed jurors as proffer, Henry did not have the opportunity to fully develop his evidence through use of the compulsory process or cross-examination. Further, in Williams, although the trial judge interrupted testimony, questioned witnesses, interjected his own opinion, and arguably made some insensitive comments, "the court found no indication that this conduct prevented Williams from developing evidence necessary to adjudicate his claims.” 542 F.3d at 1347. Henry, by contrast, was clearly not afforded the live hearing in front of a judge described in Williams, nor did he have the opportunity to directly interview each juror, relevant third parties including bailiffs, or the opportunity to cross-examine.

. In his original habeas petition filed in 2007, Henry asked that the district court "afford him a reasonable opportunity to conduct discovery, [and] that [the district court] conduct an evidentiary hearing on the claim.” In Henry’s brief filed in support of his habeas petition before the district court in 2009, cited by the Majority, Henry specifically argues that cause and prejudice exist excusing the failure to raise his juror misconduct claim, citing Williams v. Taylor, 529 U.S. 420, 432, 120 S.Ct. 1479, 1487, 146 L.Ed.2d 435 (2000), for the correct proposition that he is "entitled to an evidentiary hearing regarding the habeas court’s default finding.” To the extent that the Majority suggests Henry's footnote explicitly requesting an evidentiary hearing and citing Williams is insufficient, I disagree. Further, on appeal, the final section of Henry's initial brief is entitled "An Evidentiary Hearing Is Necessary to Resolve Conflicts in the Evidence; a Decision Cannot Be Rendered on the Basis of the Proffer Alone.”

. Contrary to the Majority's treatment, there are actually two sets of cause and prejudice analyses — one determines whether Henry is entitled to an evidentiary hearing, and the second involves whether Henry overcomes the procedural default of his juror misconduct claim. In determining whether or not a petitioner is entitled to a hearing, the Supreme Court and our court have clearly articulated two different tests, one where a petitioner has been diligent in developing his claim and one where he has not. See Williams, 529 U.S. at 435, 120 S.Ct. at 1489 ("To be sure, in requiring that prisoners who have not been diligent satisfy § 2254(e)(2)'s provisions rather than show cause and prejudice ... Congress raised the bar Keeney imposed on prisoners who were not diligent in state-court proceedings.” (emphasis added)); Kelley, 377 F.3d at 1335. Williams clearly indicates that diligence is shown by the same actions that demonstrate cause, such as whether a petitioner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court. 529 U.S. at 435, 120 S.Ct. at 1490. I agree with the district court that Henry was diligent and that § 2254(e)(2) is therefore inapplicable.

. Henry argues that there was no evidence to alert counsel to juror misconduct, which can establish cause. See Turpin v. Todd, 268 Ga. 820, 493 S.E.2d 900, 907 (1997). Alternatively, Henry argues that his appellate counsel was ineffective for failure to pursue the juror misconduct claim. See Holladay v. Haley, 209 F.3d 1243, 1254 (11th Cir.2000) ("Constitutionally ineffective assistance of counsel can constitute cause.”). I disagree with the Majority’s view that Henry did not adequately raise these alternative bases for showing cause.

. Similarly, it seems premature to require Henry to describe, with particularity, what witnesses, whom he has not yet subpoenaed, will say at a hypothetical hearing.

. It is evident, as Henry argues, that the district court's decision was motivated by the . evidentiary gaps and inconsistencies in his claim. “While Petitioner’s evidence indicates that [Hill] was a lone holdout against imposing the death penalty, it does not establish with any degree of confidence that [Hill’s] holdout status was the motivating factor behind the decision of the foreman to write the *1236 note to the judge about [Hill] or to testify that [Hill] was impeding deliberations as opposed to the equally likely possibility that the foreman was motivated by concern for [Hill’s] well-being ... as well as the belief that [Hill] was not a capable juror.”

. Accordingly, the Majority's alternative position that, even if Henry was diligent, he must show that the district court abused its discretion, is non-responsive. It is clear that if Henry was diligent, he must show cause and prejudice for failing to develop the evidentiary record. See Kelley, 377 F.3d at 1335; see also Williams, 529 U.S. at 435, 120 S.Ct. at 1489 (explaining that § 2254(e)(2) applies only to non-diligent petitioners). The Majority’s citation to Sibley v. Culliver, 377 F.3d 1196, 1207 n. 9 (11th Cir.2004) is inapposite. In Sibley, this court reiterated that § 2254(e) applies only where a petitioner has failed to develop the factual basis of a claim in state court through lack of diligence, and concludes that petitioner's claim of actual innocence is not a '’claim” within the meaning of § 2254(e). Id. It does not indicate that the standard of cause and prejudice for diligent petitioners to obtain an evidentiary hearing articulated in Kelley and Williams no longer applies. Based on this precedent, I do not see how the Majority can conclude that even if diligent, Henry did not need to establish cause and prejudice to secure an evidentiary hearing. One is left wondering, if the Majority is correct that cause and prejudice no longer applies, what test should a district court apply for determining whether a petitioner is entitled to a hearing to develop evidence on cause and prejudice to overcome procedural default? The Majority says that test is abuse of discretion, but that is a standard of review, not a test for district courts to apply. Thus, the test that applies, regardless of whether the hearing is to show a substantive claim or to overcome default of that claim, is still cause and prejudice. The Majority cites Schriro v. Landrigan, 550 U.S. 465, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007), for the proposition that petitioners seeking an evidentiazy hearing must show abuse of discretion rather than cause and prejudice for failing to develop the factual record. But Schriro simply confirms that when reviewing a district court’s decision not to grant an evidentiary hearing, appellate courts must review for abuse of discretion. See id. at 468, 127 S.Ct. at 1937 (applying an abuse of discretion standard in reviewing whether the district court erred in denying the petitioner’s request for an evidentiary hearing); Kelley, 3,11 F.3d at 1333-42 (applying the abuse of discretion standard in reviewing the district court’s application of the cause and prejudice test). Instead of eliminating the cause and prejudice test, Schriro merely clarified that proving the prejudice prong will be more difficult in the wake of AEDPA because AEDPA makes it more difficult for petitioners to prevail on the merits. See 550 U.S. at 473, 127 S.Ct. at 1939 (explaining that the "basic rule” for granting an evidentiary hearing "has not changed” but that "AEDPA, however, changed the standards for granting habeas relief”). Moreover, the Majority gives no reason to support its assertion that the district court did not abuse its discretion.