**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luis Ignacio FAJARDO,
Defendant-Appellant.**

No. 85–3618
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

April 29, 1986.

Michael Zelman, Miami, Fla., for defendant-appellant.

Stephen P. Preisser, Asst. U.S. Atty., Pensacola, Fla., for plaintiff-appellee.

Appeal from the United States District Court for the Northern District of Florida

Before .TJOFLAT, VANCE and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

Fajardo was convicted by a jury of possession, distribution, and conspiracy to distribute cocaine. At trial, over Fajardo's objections, the court excused a juror. On appeal Fajardo claims that the excusal con-

stituted reversible error. He also challenges the court's refusal to give a requested instruction. We affirm.

## I. JUROR EXCUSAL

Fajardo argues that the trial court erred in excusing juror Norris and replacing him with an alternate. During trial, Norris experienced sinus problems and distracted other jurors by gagging, sniffling, snorting, blowing his nose, and wiping his nose on his sleeve. Fajardo argues that no "sound reason" existed for dismissing Norris; the court conceded that the juror was not causing a major disruption, and, when questioned by the court, the juror stated that he was neither ill nor in discomfort. Fajardo contends that the court violated his due process right to be tried by the original twelve members of the jury. The government counters that the court acted within its discretion by substituting an alternate juror. The government also argues that Fajardo has failed to meet his burden of demonstrating prejudice as a result of the original juror's removal.

The trial court may excuse a juror and replace him with an alternate if, prior to the time the jury retires to consider its verdict, the juror becomes, or is found to be, "unable or disqualified" to perform his duties. Fed.R.Crim.P. 24(c). Accordingly, there are two alternative strands of analysis we may follow: the trial court may have excused Norris if it determined that he was incapacitated or if it disqualified him due to his disruptive effect on the other jurors.

 The decision to remove a juror and replace him with an alternate is entrusted to the sound discretion of the trial judge "whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired." *United States v. Smith*, 550 F.2d 277, 285 (5th Cir.)[1] (quoting *United States v. Cameron*, 464 F.2d 333, 335 (3d Cir.1972)), *cert. denied*, 434 U.S. 841, 98

S.Ct. 138, 54 L.Ed.2d 105 (1977). The trial court's discretion in removing a juror "is not to be disturbed absent a showing of bias or prejudice to the defendant ... or to any other party." *United States v. Rodriguez*, 573 F.2d 330, 332 (5th Cir.1978). In these instances "prejudice" includes discharge of a juror "without factual support, or for a legally irrelevant reason." *Id.* (quoted in *Green v. Zant*, 715 F.2d 551, 555–56 (11th Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984)). A separate hearing on a juror's incapacity is not required where the juror's inability to continue is clear; the court may assume that jurors who have suffered heart attacks, received word during trial that a parent has died or have slept in open court will be unable to discharge their duties. *Green*, 715 F.2d at 555–56 (citing cases). Where the juror's disability "is less certain or obvious, however, some hearing or inquiry ... is appropriate to the proper exercise of judicial discretion." *Id.* at 556.

Here the juror's incapacity was less than clear and the trial judge, in open court, but out of the presence of other jurors, questioned him about his health. The judge noted that the juror appeared to be experiencing some discomfort during trial and asked whether he had a cold. The juror indicated that he had sinus trouble, but was neither having trouble breathing nor experiencing discomfort. Nonetheless, the trial court found that the juror was experiencing discomfort and disrupting the trial and excused him over defense counsel's objections.

 Our review of the record convinces us that the court's action is supported by a factual basis. Although defense counsel had not noticed the juror's ailments and the juror's responses suggested he felt well enough to continue, his response that he was experiencing sinus trouble indicates that the court's observations were not unfounded. Our review is limited to an anti-

---

1. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

septic record and is ordinarily an inferior substitute for the first-hand observations of the trial court. Although here the evidence of juror incapacity was not overwhelming, it was sufficient to support the court's conclusion that the juror was incapacitated and unable to continue. We find, therefore, that the trial judge did not abuse his discretion.

■ We reach the same conclusion analyzing this case as one in which a trial court excuses a disruptive juror. The decision to excuse a juror who may disrupt deliberations also is entrusted to the sound discretion of the trial court. *United States v. Shelton*, 669 F.2d 446, 460 (7th Cir.) (juror properly excused where court concerned about the effect of a potentially impatient and disgruntled juror on the jury in lengthy trial), *cert. denied*, 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 454 (1982); *United States v. Peters*, 617 F.2d 503, 505 (7th Cir.1980) (no abuse of discretion removing tardy juror where inquiry into juror's whereabouts might have been "too disruptive to undertake on last day of trial.").

Here the support for the trial judge's exercise of discretion is stronger than that in *Peters* and *Shelton*. Those cases turned on potential disruption whereas here the district court found that the juror's conduct actually disrupted the trial. In response to defense counsel's objection, the court stated:

> Let me address the juror [excusal issue]. All afternoon we, those of us who were watching the jury anyway, were faced with a situation with Mr. Norris not only blowing his nose, but very loudly snorting at regular intervals of about every minute and a half. Every time he'd do that, all the jurors would sort of shutter and cringe, and they obviously were not paying attention, because everytime [sic] he did that, the other jurors would either lean forward or lean back or lean away from him, and obviously they could not pay attention to what was going on while that was happening. He was disrupting the other jurors' attention, obviously. In addition, he would very visibly take his hand and wipe his nose or wipe it on his sleeve, which obviously was again disruptive of the other jurors and the trial in general. I don't think there's any doubt in my mind that Mr. Norris should have been excused, not only for his own health reasons, but also for the disrupting effect it had on the trial.

■ Fajardo's argument that the court conceded that the juror was not a major disruption is without merit. The court's "concession" is far from clear. The judge excused the juror politely explaining: "You've been disrupting the trial a little bit, if not extensively. The other jurors seem to be disrupted." Moreover, the decision to excuse a disruptive juror is reviewed only for abuse of discretion because the degree of disruption is gauged better by first-hand impressions rather than the review of a cold record. The trial judge does not need a defendant's consent to replace a juror with an alternate before the jury retires; all that is required is a reasonable cause for the replacement. *United States v. Ellenbogen*, 365 F.2d 982, 989 (2d Cir.1966), *cert. denied*, 386 U.S. 923, 87 S.Ct. 892, 17 L.Ed.2d 795 (1967). We conclude, therefore, that the trial judge did not abuse his discretion because he excused juror Norris for disruptive conduct that could reasonably be expected to continue through the remainder of the trial and jury deliberations.

## II. PROPOSED INSTRUCTION

Fajardo's second contention is that the court erred in failing to grant his requested jury instruction concerning the testimony of a government witness addicted to drugs. At trial government witness Phillips testified that he had been addicted to cocaine for a year prior to his arrest in November, 1984. Phillips further testified as to his involvement in drug trafficking with Fajardo, Michael Bow, Kevin Shoemaker and Howard Akers. Bow, Shoemaker and Akers corroborated Phillips' testimony. Fajardo requested the following instruction:

If a witness is a narcotics addict, there are reasons why his testimony should be considered with great care. An addict has a constant need for a supply of drugs and for money to support his habit, and may also have abnormal fear of imprisonment in which his supply of drugs might be cutoff. These are special circumstances which you may consider in weighing testimony of this kind. You of course may give this testimony such weight as you think proper, after considering all relevant circumstances.

As support for this request, Fajardo's counsel cited *United States v. Collins,* 472 F.2d 1017 (5th Cir.1972), *cert. denied,* 411 U.S. 983, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973). Initially we note that *Collins* merely held that a defendant is entitled to a special instruction on addict-informer credibility, but failure to so instruct does not require reversal in every case. *Id.* at 1018–19. *Collins* does not endorse a particular instruction regarding addict-witnesses.

Instead of Fajardo's proposed instruction, the court utilized the Eleventh Circuit Pattern Jury Instruction (criminal cases), Accomplice-Addictive Drugs-Immunity, Special Instruction No. 1.3. The court instructed:

The testimony of some witnesses must be considered with more caution than the testimony of other witnesses.

For example, a witness who was using addictive drugs during the time he or she testified about, or a witness who has been promised that he or she will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his or her own case, may have a reason to make a false statement because he or she wants to strike a good bargain with the Government.

So, while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

Cf. 1 Sand, Siffert, Houghlin, Reiss, *Modern Federal Jury Instructions* ¶ 7.01.3 at 7–43 to 7–44 (1985).

Fajardo argues that the pattern instruction is deficient for failing to explain, as his tendered instruction does, that an addict's testimony must be considered more carefully because the addict's need for drugs may cause an abnormal fear of imprisonment. He contends that merely instructing the jury that an addict's testimony should be viewed carefully is insufficient and that the specific reason underlying the instruction must be given for it to be meaningful. The government argues that although Fajardo was entitled to a special instruction concerning the testimony of an addict, the instruction given by the court adequately informed the jury of the credibility concerns pertaining to such witnesses.

■ "The refusal to give a requested instruction warrants reversal only if (1) the [requested] instruction was substantially correct, (2) the requested instruction is not addressed in the charge actually given, and (3) the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense." *United States v. Lopez,* 758 F.2d 1517, 1521 (11th Cir.1985). In this case, even assuming that Fajardo's requested instruction is substantially correct, the court properly instructed the jury to consider the testimony of an addict with more caution than the testimony of other witnesses and further cautioned the jury about the credibility of a witness who may testify with the hope of receiving favorable treatment in his own case.

Fajardo cites *United States v. Kinnard,* 465 F.2d 566 (D.C.Cir.1972) (per curiam) to suggest that the jury charge was insufficient. That case, however, held that the uncorroborated testimony of addict-informers should be weighed with extreme caution because of their motive to fabricate testimony. *Kinnard,* 465 F.2d at 572. Fajardo's reliance on *Kinnard* is misplaced. First, unlike *Kinnard,* the court cautioned the jury on addict-informer testimony. Second, *Kinnard* addressed the problem of uncorroborated addict testimony. *Id.* Indeed, *Kinnard* affirmed the conviction of one defendant where the testimony of the

government's addict-witness was corroborated. *Id.* at 576–77. Here, Phillips' testimony was corroborated by Bow, Shoemaker and Akers. Finally, we note that *Kinnard* addressed the testimony of a witness who was addicted at the time he took the stand. These witnesses may particularly fear imprisonment because incarceration virtually assures that they will suffer painful drug withdrawal. *Id.* at 570–72. Although Phillips testified he had been an addict prior to his arrest eight months earlier, he also testified that he had been incarcerated for nearly three months immediately prior to the Fajardo trial. Accordingly, it is doubtful that Phillips testified as he did in order to avoid a disruption in his drug supply.

We conclude, therefore, that the court did not err by rejecting Fajardo's proposed instruction because it was adequately encompassed in the charge actually given and failure to adopt the proposed instruction did not impair Fajardo's defense.

AFFIRMED.