PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3779
_____

UNITED STATES OF AMERICA

v.

JESSE NATHANIEL PENN, JR.,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-12-cr-00240-001
District Judge: The Honorable Terrence F. McVerry

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 10, 2017

Before: SMITH, *Chief Judge*, FUENTES, *Circuit Judge*,
and STARK,[*]
*Chief District Judge*

(Filed:   August 30, 2017)

Candace Cain
Office of Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA  15222
      *Counsel for Appellant*

Rebecca R. Haywood
Michael L. Ivory
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA  15219
      *Counsel for Appellee*

———————————

---

[*] Honorable Leonard P. Stark, Chief Judge of the United States District Court for the District of Delaware, sitting by designation.

OPINION

_____

SMITH, *Chief Judge.*

Jesse Nathaniel Penn, Jr., was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  After opening statements at Penn's trial, the District Court removed one of the jurors, a student with scheduled surgery, replacing him with an alternate.  Penn now appeals, arguing that removing the juror deprived Penn of his "constitutional rights to due process, fundamental fairness, equal protection and an impartial jury" because the juror substitution violated Rule 24(c)(1) of the Federal Rules of Criminal Procedure.  Because the District Court did not abuse its discretion, we will affirm the judgment of the District Court.

I.

A one-count indictment charged Jesse Nathaniel Penn, Jr., with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  At Penn's first trial, the jury found him guilty.  His conviction was vacated on appeal.  *See United States v. Penn*, 616 F. App'x 524 (3d Cir. 2015).  On retrial, Penn was again found guilty.  This

3

timely appeal followed.[1]

We consider only Penn's contention that he was deprived of his constitutional rights when the District Court excused a seated juror without making a finding that the juror was "unable to perform" his duties or that there was a ground for disqualifying the juror.[2]

The facts relative to this issue are undisputed.

---

[1] The District Court exercised jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2] Penn raised two other issues solely for the purpose of preserving the issues for further review. Both are foreclosed. First, we agree that our decision in *United States v. Singletary*, 268 F.3d 196, 204–05 (3d Cir. 2001), upholds the constitutionality of the felon-in-possession statute. Second, we conclude that Penn's challenge to the application of the 15-year mandatory minimum sentence under the Armed Career Criminal Act also fails. Penn argues that his convictions under 35 Pa. Stat. Ann. § 780-113(a)(30) are not "serious drug offenses" under the ACCA, but *United States v. Henderson* states otherwise. *See* 841 F.3d 623, 631 (3d Cir. 2016) (stating that "documents underlying [the defendant's] felony conviction under [35 Pa. Stat. Ann. §] 780-113(a)(30) stemming from a January 25, 2004 indictment do . . . establish a serious drug offense under ACCA"). Accordingly, we need not address these issues further.

4

Voir dire for Penn's trial commenced on Monday, August 24, 2015. The District Court asked the members of the venire a series of preliminary questions. Among the questions was whether there was "any legitimate justifiable hardship reason, personal, professional, business, medical condition or impairment, or otherwise why you could not serve as a juror for the duration of this short trial?" A92. Prospective Juror #207, a student at Clarion University, indicated that serving on the jury would be a hardship for him.

The next question was, "Defendant, Jesse Nathaniel Penn, Jr., is an African-American, as you can see. Do you have such strong personal feelings, either positive or negative, regarding African-Americans which would affect your ability to be a fair and impartial juror in this case?" A93. No member of the venire responded affirmatively to that question.

Later, the District Court held individual voir dire in chambers. At that time, Prospective Juror #207 explained that he attended Clarion on a full-time basis and that the trial, which would last two to three days, would conflict with his scheduled tonsillectomy on Wednesday, August 26. After the Court asked for a "medical excuse," the prospective juror stated that he had been told his tonsils had to be removed and that the appointment had been scheduled for "two and a half or three weeks." A111. In response, the Court asked him if he could contact the doctor's office when he left and "reschedule it for the next day or Friday." *Id.* The

5

prospective juror responded that rescheduling surgery would conflict with basketball preseason practice, which started the following week. He added, "Sometimes that's not easy to get surgery postponed." *Id.* The District Court advised that it was not inclined to excuse the student from jury service because he did not "have any medical evidence" to show he had surgery scheduled and had not advised the jury operations office of his surgery. A112.

Further discussion revealed that the August 26 appointment was the earliest appointment the prospective juror could secure after getting sick with bronchitis for the fourth time in July, that he was a varsity basketball player on a basketball scholarship, that he would be unable to perform activities for two weeks after the surgery, and that mandatory practices began the "[n]ext week." A112–13.

After the prospective juror left chambers, the District Judge said he had no objection to keeping him on the jury, adding, "I don't believe him . . . because if he truly was having surgery on Wednesday, he would have notified the jury office that he is not available for a medical reason and his doctor would send a note to that effect." A114. The Court completed voir dire, after which the student was seated as the ninth juror. The jury was sworn in that afternoon and the Court gave the panel preliminary instructions. After the prosecution and the defense made their opening statements, the Court adjourned for the day.

6

The following morning, the District Court received a doctor's note from the student, called the doctor's office, and talked to the student again.[3] The doctor's note advised that the student had an appointment that day with his primary care physician in preparation for his surgery scheduled for the next day, Wednesday, August 26. The document concluded with the doctor's electronic signature. In its discussion with the student, the District Court indicated that the trial was underway, that the student had been sworn in as a juror, and that it was unlikely that he would be excused. The District Court also contacted the doctor's office and learned that the surgery could be rescheduled. The doctor's office confirmed, however, that surgery remained scheduled for the following morning.

Before reconvening, the District Court advised both prosecution and defense counsel about the note, the meeting with the student, and the call with the doctor's office. The District Judge indicated he had "rethought about it." A162. Because there was "medical support" for the student's need to undergo a tonsillectomy and the scheduling of his surgery, the District Court asked counsel for their consent to excuse the student and

---

[3] The chronological sequence of these three events on Tuesday morning is not clear from the District Judge's on-the-record recounting.

replace him with an alternate.[4]  A163.

The prosecution consented to excusing the student. Moreover, one of the prosecutors asserted that he had watched the student the day before and saw that the student was "yawning, disinterested, and clearly did not want to be there." A163–64.  Defense counsel disagreed that the student looked disinterested.

The Court redirected counsel to the issue of whether the student would "be a conscientious juror that he has this now verified medical condition with a surgery scheduled and not being able to do it." A164.  Defense counsel argued that the surgery was not a "front burner" problem or a "distraction" because the doctor's office was willing to reschedule the surgery.  A164–65. Moreover, defense counsel stated that the District Court had not "made any findings." A165.

The Court told counsel "that [the student is] very reluctant about being here." A165–66.  The Court also noted that the student repeated that, in addition to missing his surgery, he would miss class and basketball.

---

[4] The request for consent appears to have been a courtesy.  Other courts have held that "[t]he trial judge does not need a defendant's consent to replace a juror with an alternate before the jury retires; all that is required is a reasonable cause for the replacement." *United States v. Fajardo*, 787 F.2d 1523, 1526 (11th Cir. 1986) (citing *United States v. Ellenbogen*, 365 F.2d 982, 989 (2d Cir. 1966)).

8

When defense counsel said nothing had changed since voir dire, the District Court responded, "Yes, it has. We now have evidence." A167. The Court overruled defense counsel's objection, excused the student, and seated an alternate juror.

Defense counsel then put on the record that the student was African-American and that there was only one other African-American on the jury, a middle-aged woman. (From this, we infer that the alternate was not African-American.) The District Court responded, "[T]he fact that [the student] is an African-American has absolutely no bearing on the Court's decision to allow this young man to go forward with his surgery that's scheduled for tomorrow." A168.

After a recess, the jury trial resumed. The next day, the jury convicted Penn of being a felon in possession. This timely appeal followed.

On appeal, Penn argues that substituting the alternate for the student deprived Penn of his constitutional rights to due process, fundamental fairness, equal protection, and an impartial jury.

II.

Penn's constitutional claims are subject to plenary review. *See Gov't of V.I. v. Davis*, 561 F.3d 159, 163 (3d Cir. 2009). We review the removal of a juror for an abuse of discretion. *See United States v. Cameron*, 464 F.2d 333, 335 (3d Cir. 1972).

9

## III.

Penn's constitutional claims fail. Penn's equal protection claim, the only one of Penn's constitutional claims for which Penn cites any caselaw, is meritless. All of Penn's arguments are based on the District Court's alleged failure to comply with Rule 24(c)(1) of the Federal Rules of Criminal Procedure.

### A. Penn's Constitutional Claims Are Based on His Claim that Rule 24(c)(1) Was Violated

Penn argues that four constitutional rights were violated: equal protection, due process, fundamental fairness, and an impartial jury.

Most of his argument is undeveloped. Penn comes closest to developing an argument about his right to equal protection through his emphasis on the student's race and invocations of *Batson v. Kentucky*, 476 U.S. 79 (1986). *See, e.g.*, Reply Br. 29 ("[O]nce the jury was chosen through a process of peremptory challenges, in a case involving an African-American defendant and replacement of an African-American juror, removal of the juror contrary to Rule 24 implicated Mr. Penn's constitutional rights [and] is reversible error and cannot be dismissed as harmless."). But his argument is wrong on the merits.

Penn seems to believe that, under *Batson*[5] or some novel permutation thereof,[6] he was entitled to maintain the racial composition of the jury as it was selected. Of course, there is no such right. *See United States v. Mendoza*, 510 F.3d 749, 754 (7th Cir. 2007) ("Mendoza is not entitled to any Hispanics on the jury, nor by implication is he entitled to any one individual juror." (citation omitted) (citing *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975))).

---

[5] Penn suggests that *Batson* might have applied directly in this case to the judge's decision to replace the student. Even if such claims existed, which Penn does not show, there would be no viable *Batson* claim here because Penn failed to "show[] that the totality of the relevant facts gives rise to an inference of discriminatory purpose" and *a fortiori* failed to "prove[] purposeful racial discrimination" in the removal of the student. *Wilson v. Beard*, 426 F.3d 653, 666 (3d Cir. 2005) (internal quotation marks omitted) (quoting *Johnson v. California*, 545 U.S. 162, 168 (2005)).

[6] On reply, Penn analogizes to cases in which a district court deprives the defendant of his or her peremptory strikes. *See, e.g.*, Reply Br. 21 ("Here, the district court also impaired Mr. Penn's right to peremptory challenges . . . ."). This argument, like Penn's others, is premised on the District Court's failure to offer sufficient findings under Rule 24(c)(1). As discussed below, the District Court did not abuse its discretion under the Rule.

11

Penn also failed to substantiate his claims that his rights to due process, fundamental fairness, or an impartial jury were infringed by the substitution of the alternate juror. Because these arguments are totally undeveloped, they could be considered waived. *Cf. Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 416–17 (3d Cir. 2016); *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . , but not squarely argued, are considered waived."); *Rodriguez v. Municipality of San Juan*, 659 F.3d 168, 175 (1st Cir. 2011) ("It should go without saying that we deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument.").

However, we need not rule on waiver because Penn's constitutional arguments are all premised on the idea that the District Court abused its discretion under Rule 24(c)(1) of the Federal Rules of Criminal Procedure. Thus, we turn to the question of whether the District Court complied with Rule 24(c)(1).

### B. The District Court Did Not Abuse Its Discretion when Replacing the Student

Rule 24(c)(1) of the Federal Rules of Criminal Procedure states, "The court may impanel up to 6 alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties." In this case, after talking with the student twice, seeing the student's "medical evidence" that surgery was scheduled, and hearing the student's concerns about

12

missing his surgery, his classes, and his basketball practice, the District Court excused the student from further service over defense counsel's objections.

On appeal, Penn argues (1) that the District Court needed to make explicit findings on the record and (2) that those findings needed to show that it was essentially impossible for the student to continue service. These arguments fail because the District Court's reasoning was clear and because excusing a juror for the reasons that appear on this record does not constitute an abuse of discretion.

First, Penn's argument that the District Court "made no findings," Penn Br. 48, is contradicted by the record. It is true that the District Court did not issue a written document labeled "Findings." But Rule 24(c) imposes no such obligation on the District Court.[7] *See United States v. Bradley*, 173 F.3d 225, 230 (3d Cir. 1999) (upholding the dismissal of a juror because "the

---

[7] Penn refers to "procedures" or "formal procedures under Rule 24," *e.g.*, Penn Br. 47, but has not identified any procedures required by any authority that the District Court failed to follow, *see, e.g.*, *United States v. Simpson*, 992 F.2d 1224, 1228 (D.C. Cir. 1993) ("Although the trial judge did not verify the juror's claim with the court's medical staff, nothing in the rule or case law suggests that the judge must temper his discretion by performing any particular test to determine whether a juror is competent.").

record shows that the court dismissed her for *inability to serve* as a juror[] and that the court had sufficient information to support the dismissal"); *United States v. Franks*, 511 F.2d 25, 37–38 (6th Cir. 1975) (relying on the trial record to hold that a District Court "properly" excused "a juror midway through the trial with 'no more than a cursory examination' into the juror's illness"); *cf. Cameron*, 464 F.2d at 335 ("[T]he trial judge, in his sound discretion, may remove a juror and replace him with an alternate juror *whenever facts are presented which convince the trial judge* that the juror's ability to perform his duty as a juror is impaired." (emphasis added)); *United States v. Pineda*, 743 F.3d 213, 217 (7th Cir. 2014) ("This Court will not overturn the trial court's decision to dismiss a juror pursuant to Rule 24(c) unless *no legitimate basis* for the court's decision can be found in the record . . . ."); *United States v. Virgen-Moreno*, 265 F.3d 276, 288 (5th Cir. 2001) ("The district court was not required to conduct an evidentiary hearing . . . . The reasons that [the juror] offered [in a note] were sufficient factual support for the district court's decision."); *United States v. Reese*, 33 F.3d 166, 173 (2d Cir. 1994) ("Whether and to what extent a juror should be questioned regarding the circumstances of a need to be excused is also within the trial judge's sound discretion.").[8]

---

[8] Forty-five years ago, we wrote, "Both parties to this appeal have pointed out the paucity of reported cases which have considered what grounds may properly

The District Court clearly articulated its reasoning on the record. The District Court explained its concern that the student might "be a disruption . . . to the other members of the jury," indicated that the "medical support" for the student's condition and scheduled surgery was important, and concluded, after meeting with the student, that he was "very reluctant about being here . . . [b]ecause he is going to miss his surgery, he has missed his classes, and he is going to miss his basketball next week because the surgery will be rescheduled." A162–66.

Second, before the District Court and on appeal, Penn suggests that the words "unable to perform" and "disqualified" in Rule 24(c)(1) only allow jurors to be replaced when it is impossible for them to serve. For instance, Penn argues that the student was not "unable to perform" or "disqualified" because the surgery could be postponed.

Courts have not construed Rule 24(c)(1) to create such a high bar to replacing jurors. Indeed, courts have upheld a District Court dismissing jurors under Rule 24(c) for many reasons that did not completely prevent a juror from serving:

- "a planned business trip," *Reese*, 33 F.3d at

---

support the trial judge's removing a juror and replacing him." *United States v. Cameron*, 464 F.2d 333, 335 (3d Cir. 1972). That lack of authority continues to this day, so we look to other circuits' persuasive precedent.

173;

- "sinus problems [that] were a distraction to the proceedings" even though "the juror in question was well enough to continue," *United States v. Puche*, 350 F.3d 1137, 1152 (11th Cir. 2003) (describing *United States v. Fajardo*, 787 F.2d 1523 (11th Cir. 1986));

- when a juror "had a serious argument with her husband on the telephone the night before," *United States v. Brown*, 571 F.2d 980, 984 (6th Cir. 1978);

- "the illness and hospitalization of [the juror's] 87-year old mother in New Mexico," *United States v. Dominguez*, 615 F.2d 1093, 1094–96 (5th Cir. 1980); and

- when a juror-nurse's "patient suffered a heart attack," *Cameron*, 464 F.2d at 335 (describing *United States v. Houlihan*, 332 F.2d 8 (2d Cir. 1964)).

*See also United States v. De Oleo*, 697 F.3d 338, 342 (6th Cir. 2012) (citing other cases).

Most notably, in a persuasive opinion, *United States v. De Oleo*, the United States Court of Appeals for the Sixth Circuit held that a district court did not abuse its discretion by replacing a juror-student who "did not want to miss the beginning of school." *De Oleo*, 697 F.3d at

341–42. The Sixth Circuit explained that "it is not the conflict's objective seriousness but its impact on a particular juror that matters." *Id.* at 342.

Here, as in *De Oleo*, the juror-student was concerned about missing classes. In Penn's case, the student's "objective seriousness" is higher than in *De Oleo* because delaying the surgery could also affect the student's health and ability to play basketball, for which he had a scholarship. Moreover, the District Court clearly assessed the "impact" of the conflict on the student when the District Court concluded that the student was "very reluctant about being here." A165–66. Thus, it seems reasonable that the impact of missing classes was higher on the *Penn* juror than on the *De Oleo* juror.

Penn argues that *De Oleo* cannot be compared to this case because, in *De Oleo*, "the student was promised by the judge she would not miss classes and was replaced, as promised, when the trial ran longer than expected." Reply Br. 27. We fail to appreciate why that difference matters. We recognize that the circumstances in *De Oleo* were slightly different than here. In *De Oleo*, the defense failed to object when the district court added the student to the jury on the condition that that student would be excused if trial ran long. *De Oleo*, 697 F.3d at 342.

At all events, whether the circumstances here are exactly the same as those in *De Oleo* is not determinative. It should go without saying that decisions

17

related to juror substitution are within the discretion of the trial court. *See United States v. Thornton*, 1 F.3d 149, 154 (3d Cir. 1993) ("In light of the district court's wide latitude in making the kind of credibility determinations underlying the removal of a juror, we conclude the rulings here were well within its discretion."); *see also De Oleo*, 697 F.3d at 342 ("[D]istrict judges are in the best position to view a juror's demeanor and determine whether she [or he] is able to shoulder the obligations of jury service."); *Dominguez*, 615 F.2d at 1095 ("It is settled law in this and other circuits that it is within the trial judge's sound discretion to remove a juror whenever the judge becomes convinced that the juror's abilities to perform his duties become impaired.").

The District Court's decision here was clearly within its discretion.

## IV.

The decision to substitute a juror was within the sound discretion of the District Court. Because the District Court acted well within its discretion in excusing the juror, we will affirm.

18