[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13284

_____

D.C. Docket No. 3:17-cr-00112-MCR-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GREGORY S. ROTHWELL, JR.,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(December 20, 2019)

Before WILSON and GRANT, Circuit Judges, and MARTINEZ,* District Judge.

PER CURIAM:

---

* Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida, sitting by designation.

Gregory Rothwell, Jr., appeals his convictions and sentences for possession of marijuana with intent to distribute and related firearms offenses. First, Rothwell argues that the district court abused its discretion by failing to remove a juror who, prior to deliberation, expressed concerns about his safety based on his close work with state and county inmates. Second, Rothwell claims that the district court clearly erred by considering certain conduct as relevant conduct under U.S.S.G. § 1B1.3(a)(2), which allowed the ten-year window for considering prior convictions under U.S.S.G. § 4A1.2(e)(2) to run backwards from the time of that conduct rather than from the July 2017 date of the instant offense. As a result, a 2005 conviction for the sale of marijuana was counted as a predicate offense for a career-offender designation in U.S.S.G. § 4B1.1(a), and Rothwell was subsequently sentenced as a career offender. After careful review, and with the benefit of oral argument, we affirm on both issues.

## BACKGROUND

A federal grand jury indicted Rothwell for possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) (Count One); possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count

2

Three).  The indictment alleged that the conduct occurred on or about July 13, 2017.

Rothwell opted for a jury trial.  After jury instructions but before the jury began deliberating, Juror No. 6 expressed concern for his personal safety.  For the first time, Juror No. 6 revealed that as an employee of Walton County Public Works, he regularly performed maintenance at the Walton County Jail and regularly interacted with its prisoners. Prosecutors presented an exhibit of a jail phone call that Juror No. 6 believed referenced the Walton County Jail.  Defense counsel asked the district court to remove Juror No. 6 and replace him with an alternate.  The defense argued that when a juror is concerned for his personal safety, the juror is prejudging the case before jury deliberations.

In response, and with the consent of both the prosecutor and defense counsel, the district court conducted an in-chambers colloquy with Juror No. 6.  At the colloquy, the district court explained that if Rothwell was convicted, he would not serve his sentence in the Walton County Jail, but rather in a federal prison. Juror No. 6 explained that he was only worried about serving as the foreperson because it could get him in trouble with inmates he encounters during his work. The district court asked if, because he was not selected as the foreperson, Juror No. 6 could deliberate fairly and impartially.  Juror No. 6 responded that he could.  The district court then asked if Juror No. 6 had already decided his verdict.  He

3

responded that he had not, and that he would deliberate with the rest of the jury as a group. Juror No. 6 also said he was no longer concerned about his safety after the district court explained that Rothwell would not be sentenced to Walton County Jail.

After the colloquy, defense counsel objected to Juror No. 6 serving on the jury and the district court overruled that objection. Shortly after, the jury found Rothwell guilty on all counts.

Before sentencing, Probation prepared a presentence investigation report (PSR) which alleged that Rothwell "began his involvement in illegal activities" shortly after being released from state prison in April 2014. According to the PSR, a co-conspirator told law enforcement officers that he, Rothwell, and another man received marijuana for distribution from suppliers in California and that Rothwell had been doing so from April 2014 up until his arrest in the instant case. Using this testimony—and certain text messages and "drug activity" found on cell phones in Rothwell's storage unit—the PSR recommended that Rothwell's marijuana-related activities in 2014 and 2015 be considered "relevant conduct" for his instant offense. Under § 4A1.2(e)(2), the PSR also recommended that the commencement of the instant offense be 2014 rather than 2017.

The PSR also noted Rothwell's prior criminal history. Of importance here, Rothwell was convicted of selling marijuana in February 2005. Additionally,

4

Rothwell was adjudicated guilty of selling cocaine in March 2006, and of trafficking cocaine, possessing a firearm as a felon, and possessing drug paraphernalia in March 2011. Because Probation measured the commencement of the instant offense from 2014, these offenses fell within the ten-year window for considering prior convictions under § 4A1.2(e)(2) and could support Rothwell's designation as a career offender.

Rothwell objected to the career-offender designation and argued that the 2014 and 2015 activity should not be considered relevant conduct. The district court overruled the objection. It disagreed with defense counsel, explaining that "for purposes of when the offense of conviction commences, you include relevant conduct. And if the relevant conduct here was in 2014, then you go back ten years from there, not from 2017." The district court adopted the PSR's recommendation that, under § 4B1.1, Rothwell's prior 2005 and 2006 offenses were qualifying offenses.

Rothwell was sentenced to 240-months' imprisonment, comprised of 120 months' imprisonment as to Counts One and Three plus 120 months' imprisonment on Count Two, followed by five years of supervised release.

## DISCUSSION

### I.

We review the district court's decision not to remove a sitting juror for abuse of discretion. *United States v. Moran*, 778 F.3d 942, 958 (11th Cir. 2015). A district court may remove and replace a seated juror, prior to deliberations, when "facts arise that cast doubt on [the] juror's ability to perform [his] duties." *United States v. Godwin*, 765 F.3d 1306, 1316 (11th Cir. 2014) (alteration accepted). Just cause to remove a juror exists when the district court "finds evidence that the juror cannot decide the issues fairly." *Moran*, 778 F.3d at 966. "The decision to remove a juror and replace him with an alternate is entrusted to the sound discretion of the trial judge whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired." *United States v. Fajardo*, 787 F.2d 1523, 1525 (11th Cir. 1986) (internal quotation mark omitted). We will not disturb the district court's decision "absent a showing of bias or prejudice to the defendant . . . or to any other party." *Id.* That is because the district court is in the best position to determine jurors' credibility when their bias is challenged. *United States v. Sammour*, 816 F.3d 1328, 1338 (11th Cir. 2016). When a district court finds that a juror is not biased, our deference "is at its pinnacle." *Id.*

The district court did not abuse its discretion by declining to remove Juror No. 6. This conclusion is supported by our caselaw. In *Sammour*, we held that the

district court did not abuse its discretion when it refused to remove a juror that expressed safety concerns. *Id.* The juror in question wrote a note to the court clerk asking if the jury would be offered a "jury protection program," stating that the case "reeks of Alquaida [sic]" and expressing "concerns for our safety." *Id.* at 1333. The district court questioned the juror and concluded that the juror would be fair and impartial. *Id.* at 1339. The district court also assured the juror that the case had nothing to do with terrorism and that she was not in danger. *Id.*

Here, like in *Sammour*, the district court did not abuse its discretion by declining to remove Juror No. 6.[1] *See id.* at 1338; *see also United States v. Jonas*, 786 F.2d 1019, 1022–23 (11th Cir. 1986) (holding that district court did not abuse its discretion in refusing to remove juror who, during trial, stated that he "had pretty well made up my mind about" the case but stated he "would and could keep his mind open until, in effect, the case was submitted to the jury."). The district court was in the best position to examine Juror No. 6's credibility and potential bias during the colloquy. *See Fajardo*, 787 F.2d at 1525. The district court

---

[1] On appeal, Rothwell relies on our decision in *United States v. De La Vega*, 913 F.2d 861 (11th Cir. 1990). In *De La Vega*, we affirmed a district court's decision to remove a Hispanic juror over the juror's concern that he would be blamed by the Hispanic community for whatever verdict the jury reached. *Id.* at 869. The juror did not provide assurances that he could deliberate fairly and impartially, nor did he tell the district court that he was comfortable returning to the jury room to deliberate. *Id.* at 868 & n.6. Consistent with the deferential abuse of discretion standard, we affirmed the district court's decision to remove that juror. *Id.* at 869. *De La Vega* does not, however, stand for the proposition that it would have been an abuse of discretion if the district court had declined to remove the juror.

7

explained to Juror No. 6 that if the jury found Rothwell guilty, he would not be incarcerated in a state facility. Juror No. 6 assured the district court that he had not determined his verdict, that he was prepared to deliberate with the jury as a group, that he was no longer concerned for his safety, and that he was truly comfortable going back to the jury room to deliberate. After thoroughly questioning Juror No. 6, the district court determined that he was capable of deliberating fairly and impartially.

To the extent that Rothwell attempts to argue that the entire jury was tainted by Juror No. 6's presence during deliberations, defense counsel neither asked the district court to question the entire jury nor argued that the entire jury was tainted. And the district court instructed Juror No. 6 during the colloquy to inform the other jurors that "if there are any questions of the jurors about what we just discussed, you just let them know that you're satisfied and not concerned about any safety issues."

Rothwell's other argument—that Juror No. 6's failure to disclose that he worked in a position where he regularly encountered inmates proved his prejudice and bias and should have been enough to remove him from the jury—is meritless. Rothwell failed to raise this argument before the district court and we may not "correct an error the defendant failed to raise in the district court unless there is: '(1) error, (2) that is plain, and (3) that affects substantial rights.'" *United States v.*

*Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005).  Under plain-error review, the district court did not err by failing to remove the juror because the juror did not misrepresent himself during voir dire.  His answers were in-line with questioning.[2]

Because Rothwell cannot "establish, based on a cold record, that the district court abused its broad discretion despite its superior vantage point," the district court did not err in refusing to remove Juror No. 6.  *See Sammour*, 816 F.3d at 1338.

## II.

We review the district court's consideration of past conduct as relevant conduct under § 1B1.3 for clear error.  *See United States v. Maxwell*, 34 F.3d 1006, 1011 (11th Cir. 1994).  A finding is clearly erroneous if it leaves us "with a definite and firm conviction that a mistake has been committed."  *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012).  And if "a fact pattern gives rise to two reasonable and different constructions, the factfinder's choice between them cannot be clearly erroneous."  *Id.* (internal quotation mark omitted).

---

[2] The record supports this conclusion.  The district court asked the jury panel whether any of the jurors were "associated . . . in any way with the judicial system?"  Juror No. 6 did not respond.  The district court then asked whether any of the jurors had "ever worked in any capacity . . . for any law enforcement agency" including any "correctional facility."  Juror No. 6 responded that he had a second cousin who was a correctional officer in Walton County, Florida, but testified that it would not affect his ability to be fair and impartial.  Finally, the district court asked a catch-all question, asking the jurors if they had any reservations about their ability to be fair and impartial.  Juror No. 6 did not respond.

A defendant is a career offender under the Sentencing Guidelines if he has at least two prior felony convictions for either a crime of violence or a controlled substance offense.  U.S.S.G. § 4B1.1(a).[3]  "Two prior felony convictions" means: (1) the defendant committed the instant offense subsequent to sustaining at least two felony convictions for either a crime of violence or a controlled-substance offense; and (2) the sentences for at least two of those felony convictions are counted separately for calculating criminal history points under § 4A1.1(a)–(c).  *Id.* at § 4B1.2(c).

Prior felony convictions count as a criminal history point if the sentence for the prior conviction was imposed within ten years of the commencement of the instant offense.  *Id.* at § 4A1.2(e)(2).  But the "commencement of the instant offense" also includes any relevant conduct.  *Id.* at § 4A1.2, comment. 8.  A district court need only find that conduct is relevant under § 1B1.3 by a preponderance of the evidence.  *See United States v. Hamaker*, 455 F.3d 1316, 1336 (11th Cir. 2006).

When U.S.S.G. § 3D1.2(d) requires grouping multiple counts, all acts and omissions that were part of the same course of conduct or common scheme or plan

---

[3] Career offender status also requires that the defendant was at least 18 years old at the time he committed the instant offense, and that the instant conviction is a felony that is either a crime of violence or a controlled substance offense.  U.S.S.G. § 4B1.1(a).  The parties do not dispute that Rothwell satisfies these other requirements.

as the offense of conviction are considered relevant conduct. U.S.S.G. § 1B1.3(a)(2). In evaluating relevant conduct under § 1B1.3, we consider the "similarity, regularity, and temporal proximity" between the instant offense and the uncharged conduct. *Maxwell*, 34 F.3d at 1011. But, "[w]hen one of the above factors is absent, a stronger presence of at least one of the other factors is required." U.S.S.G. § 1B1.3 comment. 5(B)(ii).

Here, the indictment stated that the instant distribution offense occurred on July 13, 2017. Ordinarily the ten-year window under § 4A1.2(e)(2) would begin to run on that date. *United States v. Cornog*, 945 F.2d 1504, 1509 (11th Cir. 1991). But the district court determined that Rothwell engaged in conduct relevant to the instant offense as early as 2014—placing his June 2005 conviction for selling marijuana within the ten-year window and resulting in his designation as a career offender under § 4B1.1(a). Rothwell argues that the district court erred because, in his view, the 2014 conduct is not encompassed in the same course of conduct or common plan as the 2017 offense.

This case turns on the standard of review. Demonstrating clear error is a heavy burden, one that Rothwell has not overcome. Based on the record, we cannot find a clear error in the district court's decision to consider Rothwell's marijuana-related activities in 2014 and 2015 as relevant conduct for his instant

11

2017 marijuana distribution offense.  We reach this conclusion because the district court's decision was fully supported by the PSR and the evidence at trial.

According to the PSR, from the time Rothwell was released from prison in 2014 until his arrest, he received marijuana for distribution from the same or similar suppliers and received marijuana at the same house he shared with his fellow drug traffickers.  A fellow drug trafficker stated that he, Rothwell, and another person rented a location in Destin, Florida and a provider from California would deliver marijuana to that location.  Rothwell used the Destin location to "keep his weed at," used the same provider as his fellow drug trafficker, and received pound quantities of marijuana "on a regular basis."  The fellow drug trafficker also stated that the most marijuana he witnessed Rothwell purchase to sell was approximately three to five pounds in exchange for about $7,500.

These statements were supported by the evidence yielded from the search of Rothwell's storage unit.  At that place, officials found "smoking paraphernalia, a digital scale, two cell phones, and three stacks of cash containing approximately $10,000 in 20-dollar bills each."  The two cell phones were examined and among the data extracted were text messages from September 2014 through October 2015 that discussed the distribution of marijuana.  Further extracted were pictures of Rothwell, dated between December 2014 and October 2015, in which he posed with a firearm in his waistband, with large amounts of cash, and quantities of

12

marijuana indicative of distribution.  These facts suggest that Rothwell's 2014 and 2015 activities were part of the same ongoing series of marijuana transactions as the 2017 marijuana-distribution offense.

Rothwell's argument that his 2014 and 2015 conduct are temporally distant from the instant 2017 offense is not completely lacking in merit.  Another district court or judge could have concluded that the 2014 and 2015 conduct were not part of the same course of conduct as the instant offense.  But recognizing that possibility exists is not determinative in this context.  Our standard here is highly deferential.  And "where a fact pattern gives rise to two reasonable and different constructions, the factfinder's choice between them cannot be clearly erroneous." *Almedina*, 686 F.3d at 1315 (internal quotation mark omitted).

Since the district court's conclusion that Rothwell engaged in conduct relevant to the instant offense as early as 2014 was not an impermissible view of the evidence, the district court did not err in designating Rothwell as a career offender under § 4B1.1(a).

**AFFIRMED.**

13