**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-13038
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

MYKING DAYQUAN GREEN,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cr-20030-PCH-1

_____

Before ROSENBAUM, LUCK, and WILSON, Circuit Judges.

PER CURIAM:

Myking Green was convicted by a jury of possessing a firearm as a convicted felon.  He appeals his conviction, arguing that

there was insufficient evidence to support his constructive possession of the firearm and that the district court erred by dismissing a disruptive and noncompliant juror. After careful review, we affirm.

## FACTUAL BACKGROUND

Green was the front passenger in a car pulled over by police for running a stop sign. There were three people in the car: the driver, Green, and another passenger sitting behind Green. After the car was stopped, Green stepped out. One of the two officers, Officer Richard Muñoz, twice instructed him to get back in the car. Green told Officer Muñoz that he could not open the door because he had no key. Officer Muñoz then detained Green. Officer Muñoz's bodycam video captured nearly the entire stop and search.

When Officer Muñoz opened the unlocked front-passenger-side door, he discovered a loaded gun lying in plain sight on top of a white t-shirt on the floorboard in front of the seat where Green had been sitting. Because a background check showed Green was a convicted felon, he was arrested. After the gun was found and impounded, Green argued with the officers, telling them: "[d]id your officer see me with a gun, did you see me with a gun?"; "just because a gun is in the car, you can't say that [I'm a felon-in-possession]"; "I got out of the car"; and "[h]ow can you give me constructive possession for something I don't know about?"

## PROCEDURAL HISTORY

Green was indicted for possessing a firearm as a convicted felon. *See* 18 U.S.C. § 922(g)(1). He proceeded to trial.

During voir dire, a prospective juror said he'd need video evidence to convict and mentioned a previous "bad experience" getting pulled over by police. When pressed, though, he said he'd follow instructions and was selected as juror 10. Juror 10 was "visibly . . . ang[ry]" at his selection, which was "obvious" from his facial expression, body language, and his "muttering to himself."

After the first day of trial, juror 10 was discharged for two instances of disruptive behavior. First, juror 10 raised his hand multiple times, including during cross-examination of one of the law enforcement witnesses, to ask about the legality of the traffic stop. When the district court told juror 10 the stop wasn't an issue in the case and not to ask questions, he pushed back and argued with the district court. The district court explained that questions weren't allowed because that was the district court's "general practice" and it was nothing personal; anything that "need[ed] to be said w[ould] be said during trial"; and it was for "the parties and the judge to figure out what the issues [were]." At that point, the district court observed, juror 10 "shut down," put his head down and closed his eyes to "tune[] everything out" or "look[ed] at the ceiling," and "made it pretty obvious" he wasn't "going to listen to the evidence." The court then recessed for an afternoon break.

During the break, the government raised concerns that juror 10 "laughed at various points" during the trial, "slept through"

the testimony of multiple witnesses, and "disagreed" and "threw his arms up" during the testimony about the traffic stop. The district court had the same concerns.

Second, after the break, the government informed the district court that a court security officer reported that juror 10 said, "he did not give an F. 'Guilty or innocent, I don't care. I don't give an S. And if I can't ask questions, then I don't care.'" When asked, the court security officer confirmed that juror 10 made those statements. That evening, the government moved to dismiss juror 10.

The next morning, the district court told the parties that after considering the government's motion and conducting its own research, juror 10 would be dismissed and replaced with an alternate juror. Green responded that there hadn't been "any other issues" since the district court's exchange with juror 10 the day before and said juror 10's most recent "comment [was] made in the heat of the moment." Green instead asked the district court to question juror 10. The district court declined, explaining that it was "so obvious" juror 10 didn't "want to be a juror" and that his conduct was clearly "contemptuous" and uncooperative. Juror 10's statement about not "giv[ing] a f***" about whether the defendant was innocent or guilty—made in the presence of other jurors—"carried the day."

Juror 10, the district court found, was "visibly . . . displease[d]" and "even ang[ry]" at being selected and he "made [the] point" to the district court that he "would not follow [his] oath,"

including by "obviously" "never accept[ing]" the district court's instructions to disregard the legality of the traffic stop, which the district court observed "by his outward expression both verbally and" by his "body language and facial expressions." The district court "believe[d] that [j]uror [] 10's behavior would have tainted the other jurors" and that it was "very clear" that juror 10 couldn't have "base[d] his verdict on the relevant law and the evidence in this case." Still, the district court offered Green the opportunity to question juror 10, which Green rejected.

The trial continued with the alternate juror. When the government rested its case, Green moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. He argued that, with "[n]o DNA, no prints, no video, [and] no witnesses" placing Green with the gun, the jury had insufficient evidence to convict him. The district court denied the motion, agreeing with the government that the evidence showed that the gun had been at Green's feet, "very close to him," and reasoning that there was "enough evidence" to submit the case to the jury, "particularly" because the jury could be instructed on "the different kinds" of possession. Green rested without putting on a case.

The jury found him guilty of possessing a firearm as a convicted felon. Green appeals his conviction.

## STANDARD OF REVIEW

We review de novo the denial of a motion for judgment of acquittal on sufficiency of the evidence grounds, viewing the evidence in the light most favorable to the government and drawing

all reasonable inferences in favor of the jury's verdict. *United States v. Martin*, 803 F.3d 581, 587 (11th Cir. 2015). We "review a district court's decision to excuse a juror only for an abuse of discretion." *United States v. Godwin*, 765 F.3d 1306, 1316 (11th Cir. 2014).

## DISCUSSION

Green raises two issues. First, he argues that the trial evidence was insufficient to show he possessed the firearm. Second, he contends that the district court abused its discretion by dismissing juror 10.

### Sufficiency of the evidence

Green argues the district court erred when it denied his motion for a judgment of acquittal. He challenges the sufficiency of the evidence as to whether he "possessed" the gun Officer Muñoz retrieved from the floorboard of the front passenger seat where Green was sitting.

A violation of section 922(g) requires the government to prove (among other things) knowing possession of a firearm. *United States v. Green*, 873 F.3d 846, 852 (11th Cir. 2017). Possession can be "actual or constructive." *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011). "To prove actual possession the evidence must show that the defendant either had physical possession of or personal dominion over the thing allegedly possessed." *United States v. Leonard*, 138 F.3d 906, 909 (11th Cir. 1998).

Constructive possession, by contrast, is established where "either direct or circumstantial evidence" shows "that the defendant (1) was aware or knew of the firearm's presence and (2) had the ability and intent to later exercise dominion and control over that firearm." *Perez*, 661 F.3d at 576. A juror may infer a defendant's intent to control a gun from circumstantial evidence showing he had ready access to it within a car. *See Cnty. Ct. of Ulster Cnty., N.Y. v. Allen*, 442 U.S. 140, 164–65 (1979) (holding that where "guns [a]re lying on the floor or the seat of [a] car in the plain view of the . . . occupants, . . . it is surely rational to infer that each of the [occupants] was fully aware of the presence of the guns and had both the ability and the intent to exercise dominion and control over the weapons"); *United States v. Gonzalez*, 71 F.3d 819, 835 (11th Cir. 1996), *abrogated on other grounds by Arizona v. Gant*, 556 U.S. 332, 335 (2009) (affirming a constructive-possession conviction where the defendant pulled over in a car had "ready access" to a gun in the glove compartment, even though the car wasn't registered to him); *United States v. Gates*, 967 F.2d 497, 499 (11th Cir. 1992) (finding sufficient evidence that the defendant, who was a passenger in a pickup truck driven by his co-conspirator, possessed two loaded pistols lying under the front driver's seat).

Here, a reasonable jury could and did find constructive possession. The body camera showed Green exiting the car from the front passenger door. And the loaded gun was found sitting on top of a white t-shirt on the floorboard in front of his seat. It wasn't hidden under or behind the passenger seat; it was lying in plain sight on the floorboard near the passenger door.

We faced similar facts in *Gates*.  There, the defendant was riding as a passenger in a pickup truck where two loaded guns were found lying under the front seat.  *Gates*, 967 F.2d at 499.  We concluded that the defendant had sufficient access and control over the firearms to establish possession.  *Id.*  If anything, the evidence was stronger here because the loaded gun was found in plain sight directly at Green's feet rather than hidden under the seat.

Green asks us to look at other cases but none of them are on point.  In *Guevara v. United States*, 242 F.2d 745 (5th Cir. 1957), the marijuana was in the "middle of the car," so it was just as likely to belong to the other occupant.  *Id.* at 745–47.  In *United States v. Pedro*, 999 F.2d 497 (11th Cir. 1993), *United States v. Ferg*, 504 F.2d 914 (5th Cir. 1974), and *United States v. Louis*, 861 F.3d 1330 (11th Cir. 2017), the gun and drugs were hidden and not in plain view.  *See Pedro*, 999 F.2d at 501–02 (gun was concealed in a suitcase of stolen goods and "there was no evidence" that the defendant "helped pack the suitcase or could [otherwise] have known that the closed, hardcover suitcase contained a firearm"); *Ferg*, 504 F.2d at 916–17 (defendant was a front seat passenger while the drugs were found in a "three inch gap between the back seat and [] frame of a car"); *Louis*, 861 F.3d at 1332, 1334–35 (cocaine found in "sealed boxes" in the defendant's car).  And, in *United States v. Derose*, 74 F.3d 1177 (11th Cir. 1996), the defendant was never even in the car with the marijuana.  *Id.* at 1179–80, 1186.[1]

---

[1] *Cosby v. Jones*, 682 F.2d 1373 (11th Cir. 1982), is even further off the mark.  There, the issue was whether the "bare fact" of selling a stolen camera "a day

Aside from the caselaw, Green argues that because he didn't own, borrow, or drive the car, the jury could not reasonably infer constructive possession of the loaded gun next to where he was sitting. But, in *Gates*, there also was no evidence that the defendant owned, borrowed, or drove the car. Like Green, he was a front seat passenger with two guns next to him on the floorboard. That was enough, we said, to show constructive possession.

Green also contends the evidence was insufficient because there was no "forensic evidence" connecting Green to the gun and other people in the car could've had "physical custody" of it "at some point." But there was no "forensic evidence" in *Allen*, *Gonzalez*, and *Gates*, and still, we and the Supreme Court held that the defendants constructively possessed the guns found next to them, even though there were other people in the vehicles. And there was no evidence to support Green's argument that the other passengers in the car had physical custody of the gun at the time of the stop. The gun was found on the front passenger floorboard, on top of the shirt, almost immediately after Green stepped out of the car. The other occupants were sitting in different parts of the car. Viewing the evidence in the light most favorable to the government, as we must on appeal, "the evidence at [Green's] trial permitted a reasonable jury to conclude that [Green] . . . constructively possessed the gun." *See Perez*, 661 F.3d at 578.

---

or two" after a burglary, without any other evidence of the crime, was enough to sustain a burglary conviction. *Id*. at 1383.

*Dismissal of juror 10*

Next, Green contends that the district court abused its discretion when it dismissed juror 10. "[J]urors who are unable to perform or who are disqualified from performing their duties" may be replaced. Fed. R. Crim. P. 24(c)(1). The decision to remove and replace a juror before deliberations is "entrusted to the sound discretion of the trial judge whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired." *United States v. Fajardo*, 787 F.2d 1523, 1525 (11th Cir. 1986) (citation modified). The district court need provide only "a reasonable cause" for its decision, *United States v. Crabtree*, 878 F.3d 1274, 1288 (11th Cir. 2018) (citation modified), and we won't disturb that decision without "a showing of bias or prejudice," which includes removal "without factual support" or for a "legally irrelevant reason," *Godwin*, 765 F.3d at 1316 (citation modified). Reasonable cause to dismiss a juror before deliberations includes distracting other jurors, not paying attention, or otherwise disrupting proceedings. *See Fajardo*, 787 F.2d at 1525 (affirming the dismissal of a juror before deliberations who distracted the jury); *Crabtree*, 878 F.3d at 1288 (affirming the replacement of a juror before deliberations where he disrupted court proceedings); *Godwin*, 765 F.3d at 1317 (affirming the excusal of a juror before deliberations who "would be unable to or unwilling to focus on the trial"); *United States v. Smith*, 918 F.2d 1501, 1512 (11th Cir. 1990) (affirming the removal of a distracted juror before deliberations where "the district judge [] found that her distraction would disrupt the efforts of the jury as a whole to evaluate the evidence and reach a verdict");

*United States v. Smith*, 550 F.2d 277, 285 (5th Cir. 1977) (no error in district court replacing two jurors before deliberations who did not pay attention to the proceedings).

The district court's broad discretion extends to "choosing the investigative procedure to be used in checking for juror misconduct." *United States v. Register*, 182 F.3d 820, 840 (11th Cir. 1999) (citation modified). If it's "clear" or "obvious" that the juror cannot fulfill his or her duties, then the district court may dismiss him without further inquiry. *Fajardo*, 787 F.2d at 1525 (citation modified).

The standard changes "[o]nce deliberations have begun." *Godwin*, 765 F.3d at 1316. At that point, "a district court may excuse a juror for good cause, which includes [the] juror's refusal to apply the law or to follow the court's instructions." *Id.* (first citing Fed. R. Crim. P. 23(b)(3); and then citing *United States v. Abbell,* 271 F.3d 1286, 1302 (11th Cir. 2001)). At that late stage, a juror can only be dismissed when no "substantial possibility" exists that he will base his decision on the sufficiency of the evidence. *Id.* (citation modified). Of course, even before the start of deliberations, refusing to apply the law or to follow the district court's instructions are facts that could "convince the trial judge that the juror's ability to perform his duty as a juror is impaired." *See Fajardo*, 787 F.2d at 1525 (citation modified).

Here, the district court had reasonable cause to dismiss juror 10. Juror 10 distracted other jurors by repeatedly raising his hand and interrupting; ignored the proceedings by closing his eyes, resting his head, and staring at the ceiling (in front of the rest of the

jurors); and proclaimed that he'd refuse to follow the most central of instructions—to determine guilt or innocence by considering the evidence. *See Fajardo*, 787 F.2d at 1525–26; *Godwin*, 765 F.3d at 1317; *United States v. Geffrard*, 87 F.3d 448, 451–52 (11th Cir. 1996).

Green contends, nevertheless, that (1) juror 10's conduct was too "subtle" to show for "certain" that he couldn't perform his duties, and the district court was confused about his intentions, and (2) the discharge "adversely affected" Green's "substantial rights." But there was nothing "subtle" about juror 10's conduct. "[T]he degree of disruption [by a juror] is gauged better by first-hand impressions [by the district court] rather than the review of a cold record." *Fajardo*, 787 F.2d at 1526. From "watching him" during voir dire and the first day of trial, the district court observed that juror 10's reactions and conduct clearly showed his "disdain" for the district court and his selection. It also found in no uncertain terms that juror 10's conduct was "contemptuous" and that he wouldn't cooperate through the rest of trial. Green offers nothing to shake our deference to these first-hand impressions.

In any event, Green hasn't shown that juror 10's dismissal violated his substantial rights. Green argues that since juror 10 said during voir dire that he needed "video" evidence to convict, and there was no "eyewitness account or video" evidence placing Green with the gun, juror 10 would have voted for a not-guilty verdict if he stayed on the jury. But there was video evidence from the body camera showing Green and the gun. And because the

"alternate and regular jurors 'were drawn in the same net, and being once drawn, were afforded the precise same treatment[,]' . . . replacement of [juror 10] with [the] alternate juror [] did not bias or prejudice the defendant[]." *United States v. De La Vega*, 913 F.2d 861, 869 (11th Cir. 1990) (quoting *United States v. Johnson*, 657 F.2d 604, 607 (4th Cir. 1981)).

## CONCLUSION

Because the district court properly denied Green's motion for judgment of acquittal and did not abuse its discretion in dismissing juror 10, we affirm.

**AFFIRMED.**